UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

VICTOR LUIS CIRINO-RODRIGUEZ,
as administrator of the Estate of Alexis
Cirino-Rodriguez,

                          Plaintiff,

        -against-                                          5:11-CV-1219 (LEK/ATB)

THE WILLIAM GEORGE AGENCY FOR
CHILDREN SERVICES, INC; JEFFREY
DAILEY; KURT PHILLIPS; MICHAEL
HATCH; JASON PAGE; TYLER
DECOURSEY; AMBER OURSLER;
JUSTIN DOE; NATHAN ADAMS;
NICHOLAS WHITT; ASHLEY
DAVENPORT; and RON TRUMINO,

                          Defendants.

─────────────────────────────

### MEMORANDUM-DECISION and ORDER

## I.      INTRODUCTION

On October 10, 2011, Plaintiff filed a Complaint with the Court.  Dkt. No. 1 ("Complaint").

Plaintiff raised several causes of action related to the death of Alexis Cirino-Rodriguez ("Decedent")

against Defendants Jeffrey Dailey, several John Does, and The William George Agency for Children

Services Inc. ("The Agency") including: (1) excessive use of force, deliberate indifference to serious

medical needs, failure to intervene, and failure to train and supervise in violation of 42 U.S.C. § 1983;

(2) violation of the Developmental Disabilities and Bill of Rights Act of 2000 ("DDABRA"); and (3)

*prima facie* tort.  Id. ¶¶ 22-62.  On October 23, 2011, Plaintiff filed an Amended Complaint adding

Defendants Kurt Phillips, Michael Hatch, Jason Page, Tyler Decoursey, Amber Oursler, Justin Doe,

Nathan Adams, Nicholas Whitt, Ashley Davenport, and Ron Trumino.  Dkt. No. 7 ("Amended

Complaint") ¶¶ 1, 34-74.

Presently before the Court is Defendants' December 20, 2011 Motion to dismiss Plaintiff's Amended Complaint in its entirety. Dkt. No. 27 ("Motion"). On February 20, 2011, Plaintiff filed a Response in opposition to Defendants' Motion. Dkt. No. 33 ("Response"). On March 2, 2011, Defendants filed a Reply in opposition to Plaintiff's Response. Dkt. No. 12 ("Reply").

For the reasons that follow, the Court denies Defendants' Motion with respect to Plaintiff's claims under § 1983 except the failure to intervene claim against Defendant Whitt. The Court also grants in part and denies in part Defendants' Motion with respect to Plaintiff's claim for punitive damages, and grants Defendants' Motion with respect to Plaintiff's cause of action under DDABRA.

## II.    BACKGROUND

Decedent was a mentally disabled man with an I.Q. of 50, who became a ward of New York State pursuant to New York State Social Services Law § 395 after his parents' rights were terminated. Am. Compl. ¶¶ 5, 19, 21. At the time of his death on October 13, 2010, Decedent resided at the Agency. Id. ¶ 18. The Agency is a non-profit corporation located in Freeville, New York and authorized to care for children in state custody pursuant to § 395. Id. ¶¶ 6, 19. Plaintiff Victor Luis Cirino-Rodriguez ("Plaintiff") was appointed administrator of the estate of Decedent by the Onondaga County Surrogate's Court on October 6, 2011 and subsequently filed the Amended Complaint. Id. ¶ 4.

Plaintiff alleges that on October 13, 2010, Decedent was restrained on multiple separate occasions by several employees of the Agency. Id. ¶¶ 20-25. On one occasion, Decedent was allegedly restrained for over forty minutes by Defendants Page, Phillips, Doe, Decoursey and Oursler after Decedent was belittled for mopping improperly. Id. ¶ 21.

Following this restraint, Plaintiff alleges that Decedent was calm and went to his room. Id. ¶ 22. Nevertheless, Decedent was allegedly berated for not cleaning his room and Defendant Page

continued to confront Decedent until Decedent threw water at him.  Id.  According to Plaintiff, this instigated another restraint by Defendant Page in which Defendants Phillips, Decoursey, Davenport, Oursler, Adams, and Hatch also participated – resulting, at one point, in as many as five individuals on top of Decedent restraining him on the floor.  Id.  At the end of this restraint, Defendant Adams was allegedly in the primary position restraining Decedent's torso including his back and neck.  Id. Plaintiff claims this restraint lasted at least fifteen minutes.  Id.  Defendants who participated in this restraint allegedly recognized that Decedent was in distress yet failed to relent from the restraint.  Id. ¶ 25.  Plaintiff also alleges that Defendants failed to provide Decedent with emergency medical treatment including CPR upon recognizing that Decedent was in distress and at risk of serious harm.  Id. Defendants allegedly did not dial 911 and that Decedent failed to receive medical treatment for five minutes before a nurse arrived.  At which point, Decedent's fingers had already turned blue.  Id. Decedent was then transported to a local hospital where he was pronounced dead due to positional/restraint asphyxiation from chest and neck compression after receiving multiple injuries to the head and neck.  Id. ¶¶ 20, 23, 25.

    Plaintiff alleges that Defendants who participated in the restraints of Decedent did not notify nursing staff or a supervisor of this activity.  Id. ¶ 24.  In the alternative, Plaintiff alleges that if Defendants did indeed notify Defendant Whitt, their supervisor and the Administrator on duty, that Defendant Whitt subsequently failed to supervise or intervene.  Id.  Plaintiff also alleges that the Agency did not have any appropriate written policies for the type of restraint[1] used on Decedent nor did Defendants Dailey and Trumino implement an appropriate training regimen for proper restraint

---

    [1] Plaintiff refers to this type of a restraint as a "prone" restraint throughout the Amended Complaint.

techniques or emergency medical care.  Id. ¶¶ 29-30, 60, 61.  Plaintiff further alleges that in their

failure to train, Defendants acted with "deliberate indifference."  Id. ¶ 60.  Plaintiff also alleges

Defendants' excessive use of force, deliberate indifference to serious medical needs, and failure to

intervene were motivated by malice.  Id. ¶¶ 37, 45, 54, 67.

## III.     STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a court must "accept all [factual] allegations in the amended complaint as true and draw all

inferences in the light most favorable to" the non-moving party.  In re NYSE Specialists Sec. Litig.,

503 F.3d 89, 95 (2d Cir. 2007).  "Documents that are attached to the amended complaint or

incorporated in it by reference are deemed part of the pleading and may be considered."  Roth v.

Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (citations omitted).  To survive a motion to dismiss, "an

amended complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp.

v. Twombly, 550 U.S. 544, 570 (2007)).  This plausibility standard "is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

(quoting Twombly, 550 U.S. at 570).  Facial plausibility exists "when the pleaded factual content

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  Id.  Additionally, the "tenet that a court must accept as true all of the allegations contained in

an amended complaint is inapplicable to legal conclusions."  Id.

## IV.     DISCUSSION

### A. Claims Under Section 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must establish a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution or the laws" of the United States.  German v. Fed. Home Loan Mortg. Corp., 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted).  The plaintiff must therefore demonstrate that as a result of the defendant's actions under the color of state law, the plaintiff suffered a denial of his federal statutory rights or his constitutional rights or privileges.  See 42 U.S.C. § 1983; see also Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir. 1998).  To be acting under color of state law, a defendant in a § 1983 action must have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  United States v. Classic, 313 U.S. 299, 326 (1941); see also Monsky v. Moraghan, 127 F.3d 243, 245 (2d Cir. 1997) ("defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State").

     *1. State Action*

In their Response, Defendants claim they are not "state actors" and therefore may not be held liable under § 1983.  See Lugar v. Edmondson Oil Co., 457 U.S. 922, 928 (1982) ("under color of law" requirement in § 1983 is equivalent to "state actor" requirement under Fourteenth Amendment).  In Perez v. Sugarman, the Second Circuit held that a private child care agency was a state actor under the 'public function' theory and by virtue of the "the degree to which the State [had] insinuated itself into the actions of the [agency]" due to the "comprehensive statutory regulatory scheme of the New York Social Services Law."  Perez v. Sugarman, 499 F.2d 761, 765 (2d Cir. 1974); see also Duchesne v. Sugarman, 566 F.2d 817 (2d Cir. 1977).

5

While Perez has yet to be overruled directly, there has been speculation that it is no longer good

law.  See Phelan ex rel. Phelan v. Torres, 843 F. Supp. 2d 259 (E.D.N.Y. 2011).[1]  This issue as to

whether a private entity is a state actor is now determined by the "close nexus" test:

> When analyzing allegations of state action, we begin by identifying the specific conduct
> of which the plaintiff complains. . . In order to satisfy the state action requirement where
> the defendant is a private entity, the allegedly unconstitutional conduct must be fairly
> attributable to the state. . . . Conduct that is ostensibly private can be fairly attributed to
> the state only if there is such a close nexus between the State and the challenged action
> that seemingly private behavior 'may be fairly treated as that of the State itself. . . .
> State action may properly be found where the state exercises coercive power over, is
> entwined in [the] management or control of, or provides significant encouragement,
> either overt or covert to, a private actor, or where the private actor operates as a willful
> participant in joint activity with the State or its agents, is controlled by an agency of the
> State, has been delegated a public function by the state, or is entwined with
> governmental policies.

Alger v. County of Albany, New York, 489 F. Supp. 2d 155, 163-64 (N.D.N.Y. 2006) (Kahn) (quoting

Tancredi v. Metro. Life Ins. Co., 316 F.3d 308, 312-13 (2d Cir. 2003) (citing and quoting, *inter alia*,

Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 51 (1999); Brentwood Acad. v. Tenn. Secondary

Sch. Athletic Ass'n, 531 U.S. 288, 295-96 (2001))) (internal quotation marks omitted).

The issue of state action in this case is factually nuanced, and it is not appropriate for the Court

to resolve it at this time.  Prior to the process of discovery, essential facts are often unavailable to one

or both parties and as a result, many legitimate though factually nuanced claims would not survive a

motion to dismiss, but for a more flexible standard of review.  A determination of whether a close

---

[2]  Since Perez, district courts in this Circuit have taken various approaches to reconcile
the judicial precedent set by Perez in light of this shift in Supreme Court jurisprudence.  See,
e.g., Vega v. Fox, 457 F. Supp. 2d 172, 182 (S.D.N.Y. 2006); Phillips ex rel. Green v. City of
New York, 453 F. Supp. 2d 690, 737 (S.D.N.Y. 2006); Bolmer v. Oliveira, 570 F. Supp. 2d
301, 322 (D. Conn. 2008) (holding that a private childcare agency was a state actor); see also
Torres, 843 F. Supp. 2d 259 (holding that in the absence of a Second Circuit decision explicitly
overturning Perez, a private childcare agency was a state actor); Lynn ex rel. Julie B. v. St.
Anne Inst., 03 CV 1333, 2006 WL 516796 (N.D.N.Y. Mar. 2, 2006); Alger 489 F. Supp. 2d at
164 (holding that a private childcare agency was not necessarily a state actor despite Perez, but
deferring the decision until summary judgment).

nexus between Defendants and the State exist in this case is better addressed at the summary judgment stage, when there are more facts before the Court.  See Alger, 489 F. Supp. 2d at 164 (reaching the same conclusion based on analogous factual allegations).  The Court therefore denies Defendants' Motion to dismiss on the issue of state action.

### 2. Excessive Use of Force

Children in state custody have a constitutional right to be free from the use of excessive force. Johnson v. Newburgh Enlarged School Dist., 239 F.3d 246, 251 (2d Cir. 2001); see also EC ex rel. RC v. County of Suffolk, 08-CV-3227, 2012 WL 1078330 (E.D.N.Y. Mar. 30, 2012) (constitutional "right to be free from the use of excessive force" in "non-seizure, non-prisoner context.").  However, "[i]t bears remembering . . . that not all bodily harm caused by a [state] actor is actionable as a constitutional violation."  Lane v. Carpinello, CIVA907-CV751, 2009 WL 3074344, at *22 (N.D.N.Y. Sept. 24, 2009) (quoting West v. Whitehead, No. 04-CV-9283, 2008 WL 4201130, at *14 (S.D.N.Y. Sept. 11, 2008)).

To survive a motion to dismiss, an excessive use of force claim "must allege governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'"  Velez v. Levy, 401 F.3d 75, 93 (2d Cir. 2005) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)).  "[T]he measure of what is conscience-shocking is no calibrated yard stick."  Lewis, 523 U.S. at 847.  Therefore, "[w]hether conduct rises to the level of unconstitutional excessive force depends on the totality of circumstances."  West v. Whitehead, No. 04-CV-9283, 2008 WL 4201130, at *15 (S.D.N.Y. Sept. 11, 2008) (citing Johnson v. Newburgh Enlarged School Dist., 239 F.3d 246, 253 (2d Cir. 2001)).  The Second Circuit has summarized the relevant factors to be considered in assessing excessive force claims: (1) "the need for the application of force;" (2) "the

7

relationship between the need and the amount of force that was used;" (3) "the extent of injury inflicted;" and (4) "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Johnson, 239 F.3d at 251-52. "[I]f the force was maliciously or sadistically employed for the very purpose of causing harm in the absence of any legitimate government objective and it results in substantial emotional suffering or physical injury, then the conduct is presumptively unconstitutional." Id. (internal quotations and citations omitted). Further, "malicious and sadistic abuses of government power that are intended only to oppress or to cause injury and serve no legitimate government purpose unquestionably shock the conscience." Id. (internal quotations and citations omitted); see also Lane v. Carpinello, CIVA907-CV751, 2009 WL 3074344 (N.D.N.Y. Sept. 24, 2009).

Plaintiff claims that Defendants' excessive use of force while restraining Decedent ultimately resulted in his death and was conducted in an "excessive manner, designed to produce pain, and ultimately death, as a punishment" and was "motivated by malice and/or [was] grossly negligent." Am. Compl. ¶ 37. Here, Plaintiff alleges that Decedent, a mentally disabled man, died as a result of positional/restraint asphyxiation due to chest and neck compression and sustained multiple injuries to the head and neck following multiple restraints by up to five individuals simultaneously. Id. ¶¶ 22, 23. Defendants Phillips, Hatch, Page, Decorsey, Ouster, Doe, Adams, and Davenport each participated in at least one of these restraints. Id. ¶¶ 21, 22. Plaintiff alleges that Decedent's only actions that preceded the use of force were failing to properly mop and throwing water onto Defendant Page after repeated confrontations. Id.

Based on the record before the Court, Plaintiff states a claim to relief that is plausible on its face. Applying the multi-factor test articulated by the Second Circuit in Johnson, it is plausible that:

8

(1) the force was unneeded; (2) the amount of force was inappropriate; (3) the force was the proximate cause of the various head and neck injuries as well as the cause of death; and (4) the force was not applied in a good faith effort to maintain or restore discipline or was maliciously and sadistically applied for the very purpose of causing harm.  See Johnson, 239 F.3d at 251-52.  While every factual detail of the events that took place on October 13, 2010 was not contained  in Plaintiff's Amended Complaint, it need not be in order for Plaintiff's claim to survive.  See Iqbal, 556 U.S. 678  Plaintiff has pleaded sufficient factual content to allow the Court to draw the reasonable inference that Defendants' use of force was excessive.

Therefore, Defendants' Motion to Dismiss is denied as it relates to Plaintiff's claim that Defendants Phillips, Hatch, Page, Decorsey, Oursler, Doe, Adams, and Davenport violated Decedent's constitutional right to be free from the use of excessive force while restraining Decedent on October 13, 2010.

### 3. Deliberate Indifference to Serious Medical Needs

Mentally disabled children involuntarily committed to state custody have a right to reasonable medical care.  Lane v. Carpinello, CIVA907-CV751, 2009 WL 3074344, at *21-22 (N.D.N.Y. Sept. 24, 2009) (persons in non-punitive detention have a right to reasonable medical care); see also Youngberg v. Romeo, 457 U.S. 307, 324 (1982) (mentally disabled individuals involuntarily committed to state custody have constitutionally-protected liberty interests in adequate food, shelter, clothing, medical care and conditions of reasonable care and safety).  "To sustain a claim for failure to provide an individual in custody with [reasonable] medical care, a plaintiff must prove deliberate indifference to serious medical needs. . . .  An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to the person in custody's health or

safety." Phillips ex rel. Green v. City of New York, 453 F. Supp. 2d 690, 722-23 (S.D.N.Y. 2006); see also Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Plaintiff alleges that Defendants ignored Decedent's serious medical needs by failing to provide him with appropriate, necessary medical treatment, such as CPR, upon recognizing that Decedent was in distress and that his life was in jeopardy.  Am. Compl. ¶ 25.  Defendants allegedly did not dial 911 while Decedent failed to receive medical treatment for five minutes before a nurse arrived at which point Decedent's fingers had already turned blue.  Id.

Based on the record before the Court, Plaintiff states a claim for relief that is plausible on its face: that Defendants violated Decedent's constitutional right by knowingly disregarding an excessive risk to Decedent's health or safety by virtue of being aware that Decedent was in distress and therefore at risk of serious harm, and failing to provide reasonable medical care such as CPR.  Plaintiff has thus pleaded factual content sufficient to allow the Court to draw the reasonable inference that Defendants are liable for the failure to provide reasonable medical care.  Accordingly, Defendants' Motion to Dismiss is denied as it relates to Plaintiff's claims for deliberate indifference to serious medical needs against Defendants Phillips, Hatch, Page, Decorsey, Oursler, Doe, Adams, and Davenport.

### 4.  Failure to Intervene

"A state actor may be held liable for failing to prevent another state actor from committing a constitutional violation if (1) the [state actor] had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the [state actor's] position would know that the victim's constitutional

rights were being violated; and (3) the [state actor] does not take reasonable steps to intervene." Tafari v. McCarthy, 714 F. Supp. 2d 317, 342 (N.D.N.Y. 2010) (internal quotations and citations omitted).

Though Plaintiff does not specifically claim that Defendants had a realistic opportunity to intervene, such claim is reasonably inferred from Plaintiff's Amended Complaint. Defendants Phillips, Hatch, Page, Decorsey, Oursler, Doe, Adams, and Davenport each allegedly participated in a restraint of Decedent on at least one occasion on October 13, 2010. Am. Compl. ¶¶ 21, 22. Assuming that these facts are true – as the Court is obligated to on a motion to dismiss – it is no stretch of the imagination to infer the plausibility that each Defendant that had been present during or participated in a restraint of Decedent had an opportunity to intervene and prevent harm to Decedent, yet failed to take reasonable steps to do so. Also, based on the facts alleged and the excessive force analysis conducted *supra*, the Court concludes that it is plausible that a reasonable person in Defendants' position would know that Decedent's constitutional rights were being violated. Therefore, the Court concludes that Plaintiff states a claim that Defendants Phillips, Hatch, Page, Decorsey, Ouster, Doe, Adams, and Davenport failed to intervene during a constitutional violation of Decedent's rights.

As to Defendant Whitt, Plaintiff alleges that Defendant Whitt was the Administrator on duty and acted with malice and/or gross negligence by not supervising or intervening. Am. Compl. ¶¶ 24, 67. "[A] plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity under § 1983." Patterson v. County of Oneida, N.Y., 375 F.3d 206, 229 (2d Cir. 2004). While Plaintiff does allege a history of improper restraints, Plaintiff has failed to allege sufficient facts to state a claim that a reasonable person in Defendant Whitt's position would have known that Decedent's rights were being violated. Id. at 229 (personal involvement includes not only direct participation in the alleged violation but also gross

negligence in the supervision of subordinates who committed the wrongful acts and failure to take action upon receiving information that constitutional violations are occurring); see also Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).  Because any allegation against Defendant Whitt is too speculative, the Court grants Defendants' Motion to dismiss in regards to Defendant Whitt.

>        6. *Monell* Liability

If a plaintiff advances a claim seeking municipal liability, the plaintiff must allege that an agency policy or custom directly caused the complained-of constitutional injury; a theory of *respondeat superior* or vicarious liability cannot give rise to agency liability under § 1983.  Monell v. New York City Dep't of Social Services, 436 U.S. 658, 694, (1978); see also Canton v. Harris, 489 U.S. 378, 385 (1989); Collins v. City of Harker Heights, 503 U.S. 115, 120-121 (1992).

Defendants argue that Plaintiff may not bring a Monell claim because the Agency had no written policy at the time Decedent's rights were allegedly violated and that a policy or custom cannot be inferred from a single incident.  Mot. at 12.  This analysis is unsound.  First, Plaintiff need not identify any express rule announcing such a policy; it is sufficient to show the unconstitutional practice is "so persistent or widespread as to constitute a custom." Patterson v. County of Oneida, New York, 375 F.3d 206, 226 (2d Cir. 2004).  Second, a single action taken by a decision-maker that has final authority to establish agency policy with respect to a constitutional violation may be sufficient for a § 1983 claim against the agency.  See Pembaur v. City of Cincinnati, 475 U.S. at 480-81; see also Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 125 (2d Cir. 2004).  Where an agency's failure to train its employees displays deliberate indifference to the constitutional rights of those under its care, a policy may be inferred.  See Patterson v. County of Oneida, New York, 375 F.3d 206, 226 (2d Cir. 2004).  Plaintiff alleges that Defendants Dailey and Trumino are responsible for supervising Defendant

employees who injured and ultimately killed Decedent.  Am. Compl. ¶¶ 57-61. Plaintiff further alleges

that Defendants Dailey and Trumino failed to supervise and train properly Defendant employees in

appropriate restraint techniques and emergency medical care or implement appropriate policies

accordingly.  Id.  Plaintiff also alleges that there were several prior instances of excessive force and

improper use of prone restraints at the Agency.  Id. ¶ 8.  It is plausible that Defendants Dailey and

Trumino failed to act accordingly after becoming aware of such instances and thus exhibited deliberate

indifference to the constitutional deprivations caused by Defendant employees.  See Amnesty Am. v.

Town of W. Hartford, 361 F.3d 113, 125 (2d Cir. 2004).  Plaintiff therefore sufficient facts and raises

sufficient issues to bar dismissal at this juncture.  See Adams v. Smith, 8:07-CV-0452, 2010 WL

3522310 (N.D.N.Y. Sept. 1, 2010).

### 7. *Qualified Immunity*

Defendants are entitled to qualified immunity if: (1) their actions did not violate clearly

established law; or (2) it was objectively reasonable for them to believe that their actions did not

violate such law.  Dennis v. Westchester County Jail Corr. Dept., 11-1452, 2012 WL 2125837 (2d Cir.

2012).  When determining whether the first prong of the test is satisfied, the Court considers: (1)

whether the right was defined with reasonable specificity; (2) whether Supreme Court or Circuit case

law supports the existence of the right in question; and (3) whether under preexisting law a reasonable

defendant would have understood that his or her acts were unlawful.  McGarry v. Pallito, 10-669-PR,

2012 WL 3140298, at *4 (2d Cir. 2012).  When determining whether the second prong of the test is

satisfied, the Court considers whether reasonable people in the position of the defendant could disagree

on the legality of the defendant's actions.  Id.; see also Malley v. Briggs, 475 U.S. 335, 341 (1986).  On

a motion to dismiss, a court considers the facts alleged in the complaint to determine if defendants are entitled to qualified immunity at the pleading stage.  McGarry, 2012 WL 3140298.

As discussed *supra*, Decedent had well established rights to be free from excessive force and to have access to reasonable medical care.  See Youngberg v. Romeo, 457 U.S. 307 (1982).  Assuming the facts as stated in Plaintiff's Amended Complaint are true, the Court cannot determine at this point that it was objectively reasonable for Defendants to believe that their actions were lawful.  Defendants have thus not demonstrated that they are entitled to qualified immunity at this stage of the proceeding.

### B. The Developmental Disabilities and Bill of Rights Act

Plaintiff also brings claims against all Defendants under the Developmental Disabilities and Bill of Rights Act Of 2000 ("DDABRA").  42 U.S.C. § 15001.  Am. Compl. ¶¶ 49-56.  Defendants argue that the DDABRA does not provide Plaintiff with a direct private cause of action or a cause of action pursuant to § 1983.  Motion at 18-19.  The Court concludes that Defendants' argument is supported by relevant Supreme Court precedent.[1]  See Gonzaga Univ. v. Doe, 536 U.S. 273, 279-82 (2002); Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 28 (1981) (DDABRA Congress did not "speak with a clear voice" and manifest an "unambiguous" intent to confer individual rights; federal funding provisions provide no basis for private enforcement by § 1983); also Blessing v. Freestone, 520 U.S. 329, 340 (1997) (To seek redress through § 1983, a plaintiff must assert the

---

[3]  The Court notes that a handful of district courts in various other circuits have held that DDABRA claims may be brought against state actors pursuant to § 1983.  See Karaahmetoglu v. Res-Care, Inc., 480 F. Supp. 2d 183, 188 (D.D.C. 2007); Asselin v. Shawnee Mission Medical Center, Inc., 894 F. Supp. 1479 (D. Kan.1995); Garrity v. Gallen, 522 F. Supp. 171, 201 (D.N.H.1981) (DDABRA does not provide plaintiff a private cause of action, but does allow suit against state actors for non compliance).  However, none of these decisions is binding on the Court, and Plaintiff has failed to convince the Court that the rules stated by these other district courts comport with Supreme Court precedent and should be applied here.

14

violation of a federal *right,* not merely a violation of federal *law*).  It is therefore irrelevant whether Defendants are state actors; Plaintiff may not bring a DDABRA claim pursuant to § 1983 because no such claim exists.  The Court therefore grants Defendants' motion to dismiss Plaintiff's DDABRA claim.

### C. Punitive Damages

Municipalities in their official capacity are immune from punitive damages pursuant to § 1983; City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981), however, officials in their individual capacity are not.  See Smith v. Wade, 461 U.S. 30 (1983).  Accordingly, "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  Id. at 56.

Plaintiff alleges that Defendants Phillips, Hatch, Page, Decorsey, Oursler, Doe, Adams, and Davenport acted with malice in depriving Decedent of his constitutional rights.  Am. Compl. ¶¶ 37, 45, 67.  Unlike in cases of fraud where plaintiffs must "allege facts that give rise to a strong inference of fraudulent intent" and may not base their claim "on speculation and conclusory allegations," Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  FED. R. CIV. P. 9(b).  However, allegations of malice may not be alleged as mere legal conclusions.  See Iqbal, 556 U.S. at 687 (general "short and plain statement of the claim" mandate in Rule 8(a) should control allegations of malice).  The Court is nevertheless convinced that Plaintiff meets the Iqbal standard for malice by virtue of the alleged facts that Decedent was not given immediate emergency medical treatment after he was allegedly excessively, unreasonably, and lethally restrained by numerous Defendants for not mopping properly

15

and for throwing water on an employee who had continuously confronted decedent.  Am. Compl. ¶¶ 21-25.

The Court therefore finds that Plaintiff has stated a claim for punitive damages against the aforementioned Defendants in their individual capacities.  However, Plaintiff merely alleged Defendants Dailey, Trumino, and the Agency acted with "deliberate indifference."  Id. ¶ 60.  Such conclusory allegations cannot survive a motion to dismiss.  The Court therefore denies Defendants' motion to dismiss Plaintiff's claims for punitive damages against Defendants Phillips Hatch, Page, Decorsey, Oursler, Doe, Adams, and Davenport and grants Defendants' motion to dismiss Plaintiff's claims for punitive damages against Defendants Dailey, Trumino, and the Agency.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion to dismiss (Dkt. No. 27) is **GRANTED in part** and **DENIED in part**, consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that Defendants' Motion to dismiss (Dkt. No. 27) is **GRANTED in part** and **DENIED in part** with respect to Plaintiff's claims under 42 U.S.C. § 1983 consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that Defendants' Motion to dismiss (Dkt. No. 27) is **GRANTED** with respect to the claim against Defendant Whitt for failure to intervene; and it is further

**ORDERED**, that Defendants' Motion to dismiss (Dkt. No. 27) is **GRANTED** with respect to Plaintiff's DDABRA claims; and it is further

**ORDERED**, that Defendants' Motion to dismiss (Dkt. No. 27) is **DENIED** with respect to Plaintiff's claim for punitive damages against Defendants Phillips Hatch, Page, Decorsey, Oursler,

Doe, Adams, and Davenport  in their individual capacities; and it is further

      **ORDERED**, that Defendants' Motion to dismiss (Dkt. No. 27) is **GRANTED** with respect to Plaintiff's claim for punitive damages against all Defendants in their official capacities and against Defendants Dailey, Trumino, and the Agency in their individual capacities; and it is further

      **ORDERED**, that the Clerk serve a copy of this Order on the parties.

      **IT IS SO ORDERED.**


DATED:      August 27, 2012
            Albany, New York


Lawrence E. Kahn
U.S. District Judge